Good morning, gentlemen. We are going to lock 20 minutes aside. Appellants will have an additional five minutes you do not need to reserve any time for rebuttal. And whenever you're ready to begin, please know that we have read the briefs. And so start with that presumption and also keep your voice up. Appellants, you may begin. Good morning, Justices. I'm John Paul. I represent Rachel Greenspan in this matter. And thank you for providing this opportunity. This is a case of common law fraud. Ms. Greenspan's claims against Mr. and Mrs. Gordon were brought because the Gordons concealed that their house had a flooding problem. They sold the house to Ms. Greenspan after representing that they had no awareness that their basement had any material defect or flooding problem. The Gordons did mention a seepage incident that had happened five years before that date of the sale, quote, during a huge rainstorm and that there was, quote, no water since then. What the Gordons failed to mention was that the water they experienced in their basement wasn't seepage, it was a flood. But the inspector, you know, indicated in the report that there were water lines, that there had been some flooding, correct? No, the inspector noted that there was evidence of water damage, but the only matter that was discussed was molt because the evidence of water damage was balanced against the inspector's own finding that there had been remediation, sealing of cracks that would have stopped seepage. And it was only molt. There was a toxicity question about the molt that was evident. He focused on the molt, but he did disclose that there had been water damage as well as some remediation of water damage, correct? Both of those things. Yes, it was mentioned, but the emphasis was on molt, which my client followed up with an inspector to look at the molt and to decide what to do about it. Counsel, at the time that your client was buying the property, at the time that it was being sold, they had remediated against whatever flooding or seepage had happened. So what was their obligation to disclose at that time? What was their duty to disclose? What they did not disclose was that they had remediated by installation of standpipes. So it's not your position they had to specifically disclose how they had remediated, rather than to say, at this time, there is no issue? Well, the word remediation does not really cover the issue of a problem that was ongoing that they needed to act to prevent from having any further flooding occur. So it was not remediation in the sense of a fix that should have been concealed. I mean, they should not have concealed that. They should have said, we fixed it, and here's how we fixed it. We installed standpipes, and that took care of it. Why couldn't your client have asked, hey, it stopped flooding? Why? Because the word flood was never brought up by... It stopped seeping. Why? Because there was remediation that the inspector discovered. I mean, it was noted. It was clearly noted. I'm sorry, what was clearly noted? That the concrete had been, the new concrete had been put on? That there had been sealing. Yes, yes. But that was noted by the inspection. So that was your client on notice that that had occurred. Yes, and by the way, there's mold, and you might want to look into that. There was no, the fact is, there was no seepage problem. That was established through the deposition, the interrogatory answers. Mrs. Gordon said there was no seepage. Well, then the repairs must have happened somewhere, sometime before. The facts of this matter go very deep as to the contradictions and the pleadings, what was said at what time. But the fact is, there was a backup from the floor drains that caused a flooding problem that was disclosed as a seepage that was taken care of. No other problem. My client asked the real estate broker... Well, wait, that was true. There was a backup from the floor drains that she termed, Mrs. Gordon termed as seepage. And I think seepage is also in the insurance documents that were tendered to you. They used the word seepage. There were no insurance documents tendered. Those insurance documents were obtained by subpoena. That's what I mean. I mean the word obtained by subpoena. But they used the word seepage as well. So I don't know if you call it seepage or flooding. Water came up. That was disclosed, both by the handwritten note. She called it seepage, which you don't like that word, but she called it seepage. Water came up. That's seepage, correct? No, Your Honor. No, why? No, because seepage, the way it was discussed was, and Mrs. Gordon said it in her own deposition, when I asked her, what did you mean by seepage? She said, oh, some water on the ground so electrical cords wouldn't get wet. There was no discussion of a flood. A flood that destroyed their property to the tune of $11,000 is not seepage. It's a flood, which they took active steps to control and take precautions against. So at the closing, the sellers did give a credit or consideration for the repairs or deficiencies that were found by the inspector, correct? Yes, there was quite a few. There was $12,500 price reduction and a homeowner's warranty policy. And none of those matters had to do with flooding, $12,000. Okay, so we do know that, I guess, the agreement on the contract with respect to the repairs, but the homeowner's warranty policy would have been in case something like this occurred, correct? I cannot, I do not believe so, Your Honor. I mean, the key point in this matter is that the concealment of the standpipe fix that was successful for the sellers, the Gordons, was never disclosed or was even lied about. At their depositions, they began by lying and stating, oh, we had the standpipes in all the time. Well, that can't be part of your claim, what they said in their depositions. Well, it's part of the concealment, Your Honor. The concealment, but that was long after you bought the property. I'm confused. I mean, you made it. Because at the time, if the Gordons had their story straight and they had stuck to, oh, no, we kept the standpipes in all the time, you knew about those standpipes, well, then what could my client have done? Because there was an obvious remediation.  And I think there's certainly evidence that the standpipes weren't in when your client built the house. They stated that they weren't. Okay. They clearly stated on sworn affidavit of Mr. Gordon. That they weren't in. Right. That they weren't in. And, in fact, they tried to, but they tried to, at first, before they realized that we had pictures of the drain covers, that when you put the drain covers back on the drains, looked, no, there was no evidence that there was any standpipe or any problem. And so by saying, we kept the standpipes in all the time at their deposition, that brought the question, well, then how the heck did my client have all the floor drains? But I don't think that was their testimony in the deposition that they kept the standpipes in all the time. Yes, it was. It was. We kept them in most of the time. Sometimes in the winter when there wasn't flooding, we didn't have them in. No, the deposition. I'm reading from this deposition. Once I installed them, for the most part, they would stay in. Sometimes I would take them out in the winter if anything was frozen and there was no reason to have them in for protection. And there was no such information provided to my client. I understand. Yes. Okay. But your claim can't be about what they said in their deposition. That may go to their credibility, for sure. Yes, and to their intent to conceal, and the fact that they had been concealing from the very beginning. That they didn't disclose the standpipes to your client. Yes, Your Honor. And I guess my question is, why didn't your client inquire? What did you do to remediate? What did you do about the seepage in 2012, if anything? Was that inquiry ever made? She asked of the real estate broker, you know, what was the question of seepage? And the real estate broker said, no, that was nothing. That's in her affidavit. And after being told that it was nothing, that was also brought forth by the defendant herself when she said, I was just talking about some water on the floor. That was not anything she said to your client before the sale. No, it wasn't. That was something she said in her deposition. But it was the intention of there was seepage. There was seepage. I asked her, what did you mean by seepage? She said, because these words have specific meaning. They do have specific meaning. But I guess I still go back to, at that point, on the disclosure, they're disclosing what the situation is as of that day, as of that time. What is the issue? And so she disclosed more than would be necessary by saying, 2012, there was this issue. Well, there's a distinction, Your Honor, because when you state on the one side, on the column, that says, no awareness of any flooding problem, and then you distinguish it by saying, oh, there was a little seepage, and it was five years ago, and it's gone, you are stating there is no flooding problem. And the evidence was? And the seepage means it's not flooding. At least whether this is, I think 2013 turns out to be the flood date, right? That's the big rainstorm? Yes. So since 2013 to the date of the contract, the disclosure, there had not been an incident? Because they had put standpipes in, which we weren't aware of. To begin, they would have had my client where they wanted her if they had been able to stick to their story. No, the standpipes were in all the time. Why would they have started that story if not to the fact that they had been concealing it all along? They had been concealing what they had done. Why would they both say that? No, we kept them in all the time. They didn't say that, but okay. But on the other hand, what your? On the other hand, they said, we don't remember what we did. She said, I don't remember, but he said, and I'm sure he was the one, just not to be sexist about it, but he's probably the one who put them in and took them out and was responsible for them. Once I installed them, for the most part, they would stay in. Sometimes I would take them out in the winter if everything is frozen, and there was no reason to have them in for protection. Well, why wasn't my client protected? Why were they allowed to be protected and they wouldn't? Why did they disclose the standpipes is your question. And my question, which is still not clear I have an answer to, is why didn't she ask? Why didn't she ask what has been done since 2012 when you had the seepage? What have you done with anything? What's been done? What remediation has been done? What protections have been taken? Well, as we've, going back to the inspection, the inspector did not raise any active leaking and raised also that there was sealing that was visible, was evident. So if there's no leaking and there's some old evidence of mold, then why should there be anything else to do but check it on the mold, like the inspector said, make sure the mold isn't toxic. And she asked the real estate broker. And maybe this is just ignorant on my part, but it seems to me if water comes in one year, unless you do something about it, it's going to come in other years, it's going to continue to come in, unless you do something about it. Unless you do something to stop it, it's going to, every time there's a heavy rain, you're going to have the same problem. If it's just seepage from a huge rainstorm, seepage means dribbling through cracks, water coming in. It doesn't mean water flowing in through floor drains from a backup on the street. It's two completely different concepts. If we're focused on concealment, and I think that's where probably we should be focused on, on concealment, then I think what Justice McCullough is asking about is if one of the elements of concealment is that the other party could not have discovered the truth, through reasonable inquiry. So could she have discovered the truth through reasonable inquiry? Is your position on that? Had she asked? Well, reasonable inquiry in my mind was the inspectors that she brought forward to look and see if there were any problems. Reasonable inquiry was once they told her there was mold, she checked the mold. When they said there's no active leaking and there's been sealing, there it is. Follow up with the contractor. Right, and she called the contractor to check on the mold. For the Gordons to have removed the sandpipes and replaced the old, worn covers so everything looked normal was wrong. It was fair and simple, it was wrong. Because they had already lessened their story about what had happened. They had already considered it taken care of, everything was done. While at the same time they were hiding what they had done. So no, you can't, you can walk through a property and start, is it a hide and go seek? Or okay, let's try to find out where we hid something. So no, they hid very easily by putting the old covers back on the drains. They hid what was done. So no, it could not have, that was the inquiry. Inspections that were not evident, where the problem was not at all evident and would be unlikely to be the problem either because all there was was some seepage. Seepage versus flooding back up. So counsel, just for clarity's sake, you're not arguing that there is a genuine issue of material fact that would have prohibited the entry of summary judgment. You're just saying that summary judgment should have been entered in favor of your client. No, because on a fraud matter, I would not have brought the summary judgment if the court had modified its facts deemed admitted. Because the facts deemed admitted covered everything. They covered concealment. They covered misrepresentation. Then the court said, well, no, anything substantive was not admitted. So what is the issue that is left to be determined? The issue of fact is left to be determined. But in your opening brief, you do talk about the propriety of the court's modification order. But you seem to back off of that in your reply brief, right? We don't have anything regarding that hearing. There was no hearing. The court came out and ruled. There was no hearing. Judge Curry has a very, very busy call. He comes out. He says, I've read the briefs, and here's my order. And counsel for the Gordons wrote the order. There was no hearing at all. So are you still then? What I'm saying is that the facts that even removing the word falsely or made an additional misrepresentation, remove those words from the 49A, 50A, and 52A, and you have at the same time that defendants were in the habit of using riser standpipes as a precaution against flooding, they wrote they had no awareness of flooding. That's 49A, after taking out the objectionable language that the court wanted taken out. 50A, after taking out the objectionable language, defendants stated that the last water event in the property had been seepage in 2012, when in fact they had a flood in 2013. In 52A, at number four of the disclosure, they responded no to the statement, I am aware of material defects in the basement or foundation, including cracks or bulges, though they had for several years continuously taken precautions against the defect. But the difference in the years, wasn't that inadvertent, the 2013 versus 2012? It's a question of credibility also. It could very well have been, but there was a flood in 2013. There wasn't seepage in 2012. And when you're continuously taking precautions, you cannot state I am aware of no material defects. No material defects that are currently ongoing. Because I'm always on guard, I'm always on guard taking precautions, because if I don't, I'm flooded. They didn't take those precautions. There's no other reason to take precautions, because they were worried about floods. And that is a material defect. So, just as Odin Johnson's question is, is there a question of material fact? Is that your position? There is a question of material fact that should have prohibited the motion for summary judgment from being granted? Yes, certainly. And what's that question? Whether or not it was the defendant's intention in these misrepresentations to induce my client to buy the property. These are all misrepresentations. They're black and white misrepresentations. They're statements that are not true. But were they misrepresentations made with the intention to induce my client to buy the property? That, in this matter, is the question. Did your client receive any proceeds from homeowner's insurance or the home warranty? No. Did she receive for either of those? No, she did not have any flood damage insurance. Okay. She took the efforts and had the property sealed. She spent $30,000 fixing the defect in the basement. It's a $30,000 fix, roughly. Is there a question of fact as to your client's reasonable reliance? Is that also a question of fact? Certainly. Whether my client reasonably took enough efforts to inspect the property. But when there's concealment, the bar is much lower for reasonable reliance when a problem is being actively concealed. That's all I have to say. And do you have a case for it? Do you cite a case for that, where the bar would be much lower? Yes, where you don't even need to inspect under certain circumstances of active concealment. Yes. Okay. Anything else? I might have to correct. I might have said that in the motion. I cannot directly state, but I have in my briefs clearly stated that when there's active concealment, the bar is. You're not held to the same obligation of inspection. Is there a case?  Okay. The case is in your brief. Since there were cross motions, I cannot swear that it was in the briefs before this Court. Okay. That is the law. Okay. Thank you, counsel, and you'll come back at a rebuttal. Thank you, Justice. Good morning, Your Honors. Adam Beeney here for the appellees. And may it please the Court, we believe the Court should uphold, sorry, affirm the decision of the Court below. This is, as stated, a claim for common law fraud. And there's two elements on that in particular we think need to be focused on. Number one is the issue of whether a material misrepresentation was made. And number two, whether there was a reasonable reliance. Counsel just concluded in saying that when there's concealment, you don't need to inspect. Perhaps, but they did. The buyer did inspect in this case. That inspection report did give her notice of order damage in the property. The trial court had these facts in front of it. Most importantly, the trial court had the only alleged misrepresentation that was made in front of it, in writing, in a form that the parties do not dispute. That's the disclosure statement. I'm going to ask you to speak a little louder. I apologize. My voice is quiet. I apologize. Okay. Thank you. So with the residential real estate property disclosure form, okay, reliance becomes a question of, in part, statutory interpretation. Right? The Residential Real Estate Disclosure Act implies certain limits on the duty to disclose and therefore imposes certain limits on the reliance that a buyer can take on that. Specifically, as the courts noted, it's about the moment in time when the disclosure is signed. It's about whether or not that condition is still present. Now, you heard testimony, I think undisputed, that there was a water seepage problem or a water flooding problem, as they stated. I believe that the insurance documents do say seepage, not flood. That seems to be the terms my clients use consistently. Whether that was an engineer's language or something a judge would prefer to see, it's what they said. And when you're looking at intent to mislead, you look at what they said before. You look at what they said on the disclosure form. It's consistent. I don't see the intent to mislead with that. What about the hiding of the pipes, though? I mean, that's the other act of concealment. So there's not a lot of evidence for hiding. There's a lot of evidence that there's an agreement the pipes were not installed at the time. In February, which is the winter, and the testimony is that sometimes they would remove them in the winter. Well, let's say hiding the fact that the pipes were used on an ongoing basis to control potential seepage. So I think it's inconsistent to say that they were hiding the problem with seepage by hiding the pipes. But went out of their way above and beyond what the Disclosure Act requires and put a handwritten note into their disclosure that says there's been water seepage in the basement. At that point, it did put the buyer on notice that there were water seepage issues with the basement. She had the opportunity to get an inspection. That inspection did reveal water damage. That was addressed at closing, and we've been through the negotiations before that. And there was an opportunity for the inspector to look there and note that there were other signs of issues. At that point, it is my position that she had a duty to go and ask the seller, what did you do? How did you remediate? Is there an ongoing problem? And if my clients had then made a material misrepresentation at that time, perhaps there would be a claim. But they never had the chance. The question wasn't that. So had she asked then, we're entering that world, had she just asked, they would have said, oh, yeah, there's some pipes there laying over the side by the paint cans. I suspect that's true, and I think the oral argument today kind of emphasized that in a way. Because, as he said, if my clients had kept their story straight at their deposition and said, we always left it in, we had it in at the time, if they were dishonest people, then they would have said that, and they would have had less trouble going forward in the trial. But they're not dishonest people. They testified honestly at the deposition. They would have told them, I believe. Regardless, we have a record problem because there isn't a good record of what the court did and didn't consider and what the court ultimately based its decision on. I know counsel said there wasn't a hearing, but the court did come out and address the parties. There was a discussion. Significantly, there are questions about whether or not objections were made here to the revision of the prior order, right? You can't stand there silently while the court makes a ruling, not raise an objection in the trial court, and raise your objection for the first time on appeal. And that is, in part, what's happening here when he talks about the admissions and whether or not he was prejudiced by the admissions that were made. He's not really arguing that. And this is summary judgment. It's to know that we don't really care what the trial court, I mean, I'm always interested in what the trial court has to say, but it doesn't bind us. We don't need to know. Fair enough. And ultimately, I think what this comes down to, Judge, is a question of law, of whether or not the notice that was provided, and there's no dispute about the form of the notice or what was given, and the inspection that took place shifted the burden to the buyer to open her eyes and examine the record before her, look at the property, and make a conscious decision about whether or not she wanted to go forward with the purchase. What the Fleischer Court, citing Seedfeld v. Milken National Bank of Decatur, that's 154 Ill. Out. 3rd. 715, said a person may not enter into an interjection with eyes closed to available information and in charge that it has been deceived. And I would submit that's what has happened here. Another issue I think that is raised is there's a claim of $30,000 that was required to repair this, but at the same time, there's testimony that, in fact, all that was required was to put the plastic standpipes down. So if this is the same condition that my clients had addressed with the plastic standpipes, it raises the question, why was $30,000 required to make that remediation? And it suggests to me, perhaps, that the Court could have found that those were, in fact, not the same condition. But again, we don't have a record of what Judge Curry came out and said. So, in closing, and I know I'm not using all my time. That's okay. When we look at this, again, I focus on the elements of the case. Unless there's questions. Well, I will ask a question. I can tackle this, certainly. So, you know, this matter was disposed of on summary judgment. Yes. And counsel argues that there are issues left to be decided by the Court, or that should have been decided by the Court, such as, you know, the intention. That's a question of fact that, you know, is still up in the air. You know, why were the standpipes in? My understanding is that they were in, I guess, sort of another part of the basement or a storage room or something with, you know, other supplies. You know, was that enough to put her on notice? Maybe, maybe not. Were they advised to take the standpipes out by the realtor because it doesn't show well with standpipes there? You know, he also, we talked about whether or not reliance, your client's reliance was reasonable. So why wouldn't those issues that are still, you know, outstanding preclude the entry of the summary judgment? So I think particularly when we look at the reasonableness of reliance, right, whether the actions that were taken were reasonable or not, that's a question of law. And that is ultimately not a question of fact. What's the question of fact is what did she do, right? What steps did she or did she not take? And I don't think there's any dispute here what those steps were. She received a disclosure that said seepage. She hired an inspector. The inspector noted not only water damage but other conditions that they, she then was on notice regarding. And at that point, the question for the court to determine is, is that stopping there, saying I hired an inspection report, he told me there were problems, and I took no further action. Is that sufficient to establish reasonable reliance on the statements? I think at that point it is not. And I think the case law as cited in Fleischer says it's not. Well, you're focused on Greenspan, but what steps did the Gordons take? That seems worth a question of fact that your opposing counsel raises. What steps did they take? Were the pipes in? Were they not? Were they placed to the side? Were they hidden by some area where you wouldn't see them? Those seem like possible questions of fact. Potentially those would all go to, however, concealment or misrepresentation. Concealment. Not to reasonableness of reliance once disclosed. And, again, there's a written disclosure of water problems in the basement. There is an inspection where they had an opportunity to learn that there were past signs of water. Also, once that little note on the side of the disclosure, once that seepage in 2012, once that's done, we step beyond any concealment. So I think specifically once the inspection report is done and returns a result that there's water damage in the basement, that's when we step beyond concealment. I think that's what Fleischer says. It's not about whether or not this alone would have been enough. That would probably be a question for the lower court. But when you pair it with the inspection, then I think we go beyond what is required under the Real Estate Disclosure Act. We go into actual notice of the current condition of the property. She was in actual notice at that point. And whether or not there was an attempt to conceal, that concealment had failed. Can you respond to opposing counsel's argument that the question of what reasonable reliance is, is different if there's active concealment or that somehow the burden is lower on the? So where I think that goes to is if I know nothing about the property and you have concealed from me the defects and I do not discover it prior to closing, you can't turn around and say, well, you had caveat and tour a duty to go out and actively search through the building and look for these conditions. Sure. If no inspection had been prepared, that would be an argument that could be made. An inspection was done. The inspection identified the problem. We moved beyond concealment at that point because we're no longer in a world where the damage had been concealed. We're now in a world where the damage had been, to the extent it was present, disclosed. So it's based not on what she could have found out if she knew nothing, but what she was actually told and what that triggered in terms of her career.  And ultimately, again, it's important to remember what the seller's duties are here with real estate disclosures. It's under the default rule. They have no duty to disclose. There's a statute that imposes a duty to disclose in residential real estate transactions. That is very limited, and the limitations on that disclosure are listed on the form that the buyer receives. It says, note the disclosures are intended to reflect the current condition of the premises and do not include the problems, if any, that the seller reasonably believes have been corrected. So the argument is when the standpipes are in, there's no problem with flooding. Okay. That means we have a reasonable belief that they've been corrected. Now, he says, yes, but you hid the standpipes. Best case, we actively concealed them. Okay. But we gave you enough information in the disclosure report that it gave you the impetus to go get an inspection done, tell the inspector, look at the basement. The inspector comes back and says, I see water damage, and it's enough water damage to cause mold. And at that point, you can't just stand back and go, well, I've looked, I've known, and now I'm just going to go through with the closing, and if there's further problems in the future, I'll go sue them and get my damages back, which is effectively what happened here. Counsel, do you know if this was, I guess, taken into consideration or part of the negotiation for the inspection credit, the $12,500, I think it was? I think the problem when you're dealing with a real estate transaction is that all of the issues that could be raised prior to that that were known, and the inspection report was part of that negotiation, are merged into the final closing documents. And once the deal is sealed, all of these issues go into it. So I can't separate out, was it this electrical socket that didn't work, was it this potential problem with the roof, was it the mold in the basement? It's all involved in the credit, and it's negotiated by both parties. I can't tell you which one side thought they were paying for and what the other side thought they were receiving the money from, if that makes sense. The payment was for intended disclosed defects with the properties that were discovered during the inspection period. This would be including the water damage. Any other questions? Thank you, Counsel. Thank you. In answer to Your Honor's question, at the record, page 824, CA-24, my client very clearly stated the concessions that were negotiated after the inspections. Mold in the basement and garage, $2,000 roughly. So, yes, the mold question was raised by my client. And since there was no flooding problem or seepage problem, it was not raised because she was not aware of such a thing. And this is not a Real Estate Disclosure Act case. The Real Estate Disclosure Act has nothing to do with misrepresentations made in this matter. Counsel continuously goes back to the all of the qualifications on the Real Estate Disclosure Act. This was never brought as a Real Estate Disclosure Act case. It's a common law case. But the statute is what had run as intended. Yes. And misrepresentations on the Real Estate Disclosure form can support an action. That's the law. And Fleischer cannot be cited. Fleischer was post-trial. And the judge, as I pointed out in my reply to Your Honors, was the judge said he very well may have decided differently. But in that case, it was for the jury to decide. That was post-trial. That was not a summary judgment matter. It had to be clear and convincing evidence to overturn the decision in Fleischer. This is a de novo question. What matters should have been sent to the jury? All of these questions should have been sent to the jury. Concealment, does the concealment, as I stated in my reply brief, concealment in and of itself supports the fraud action. Counsel, you stated that your client spent $30,000 to seal the entire property. Was that done before or after she learned about the standpipes? That was done at the same time. She really didn't know anything about the standpipes because she had never been told. But as she stated in her deposition, after the flood, she was going through the basement and noticed a couple of PVC pipes. She had no idea what standpipes were. They weren't there when she was inspecting the property before. The inspectors would have seen the standpipes. That would have given them notice that there was something. So the question of were the pipes hidden or not is also a question for the jury. All evidence stated from my client's side is everyone who walked through, nobody saw standpipes, including an uncle who was a plumber. Anyone who had seen standpipes would have mentioned that there was a flooding problem. That would have been obvious. They hid the pipes. They kept them out of sight. They threw them in a corner. What other garbage is in my client's affidavit after? Well, counsel mentioned instead of spending the $30,000 for the ceiling, she could have just put the standpipes back in. She wasn't going to take another chance. Okay. There was no risk. She wasn't going to take any further risk. Thank you both. Are you done? I'm sorry. Yes. Thank you, Your Honor. Okay. Thank you both. We will take the matter under advisement and you will hear from us shortly. I believe we are in recess.